UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| GUILLERMO BLANCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-cv-00429-JAW |
| | ) | |
| BATH IRON WORKS CORPORATION and | ) | |
| GENERAL DYNAMICS CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO DISMISS COUNT II**

The Court concludes that a company physician's disclosure to the employer of an alleged omission in an employee's employment entrance examination questionnaire potentially violates 42 U.S.C. § 12112(d)(3)(B), the Americans with Disabilities Act confidentiality provision, and the Court denies the employers' motion to dismiss for failure to state a claim.

I.      **STATEMENT OF FACTS**

A.      **Procedural History**

On October 29, 2010, Guillermo Blanco filed an amended complaint against Bath Iron Works Corporation (BIW) and General Dynamics Corporation (Defendants), alleging violations of the Maine Human Rights Act (MHRA), 5. M.R.S. § 4551 *et seq.*, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq. Pl.'s First Am. Compl.* (Docket # 4) (*Am. Compl.*). On December 28, 2010, the Defendants moved to dismiss the ADA claim in Count II of the Amended Complaint. *Defs.' Bath Iron Works Corp. and Gen. Dynamics Corp. Mot. to Dismiss Count II of*

*the Compl.* (Docket # 10) Attach. 1 (*Defs.' Mot.*). On January 11, 2011, Mr. Blanco responded to the Defendants' motion. *Pl.'s Opp'n to Defs.' Mot. to Dismiss* (Docket # 13) (*Pl.'s Opp'n*). On January 25, 2011, the Defendants replied. *Defs.' Bath Iron Works Corp. and Gen. Dynamics Corp. Reply to Pl.'s Opp'n to Defs.' Mot to Dismiss* (Docket # 14) (*Defs.' Reply*). On June 23, 2011, the Court held oral argument on the motion.

###     B.     The Amended Complaint

Before and during his employment at BIW, Mr. Blanco had Attention Deficit Hyperactivity Disorder (ADHD). *Am. Compl.* ¶ 21. On or about January 9, 2008, he applied for a position with the Defendants. *Id.* ¶ 25. On or about February 22, 2008, the Defendants offered Mr. Blanco a job subject to satisfactory completion of a pre-placement medical screening, which included filling out and signing a "Medical Surveillance History Questionnaire" (the questionnaire). *Id.* ¶¶ 26, 27. Mr. Blanco completed the screening on March 11, 2008. He answered the questions on the questionnaire truthfully based on his understanding of the questions. *Id.* ¶ 28.

On or about March 17, 2008, Mr. Blanco began working for the Defendants in the position of Designer. *Id.* ¶¶ 30, 31. He was qualified to perform the duties of Designer and able to perform all essential functions of his position with or without reasonable accommodations, and in May and July of 2008, he received satisfactory performance evaluations from his supervisor. *Id.* ¶¶ 31-32.

In July 2008, Mr. Blanco was transferred to a different team. *Id.* ¶ 33. His new position required more multitasking, which gave him difficulty because of his

ADHD.  *Id.*  On or about September 15, he was counseled by his supervisor for his performance in August and September.  *Id.* at 34.  During that meeting, Mr. Blanco disclosed that he had ADHD and that he believed his struggles with the multitasking required by the new position were attributable to his ADHD.  *Id.* ¶ 35. He confirmed his ADHD diagnosis with a note from his doctor he provided to his supervisor on September 22, 2008.  *Id.* ¶ 36.  On or about September 29, 2008, Mr. Blanco provided a written request for reasonable accommodation to the Defendants. *Id.* ¶ 37.

Shortly thereafter, the Defendants sent Mr. Blanco to meet with the Defendants' in-house salaried medical provider, Dr. Maria Mazorra.  *Id.* ¶ 38.  Dr. Mazorra had administered Plaintiff's pre-placement medical screening in March 2008.  *Id.*  During his meeting with Dr. Mazorra, Mr. Blanco reiterated his request for reasonable accommodation, and in response, Dr. Mazorra began to interrogate Mr. Blanco about the "Medical Surveillance History Questionnaire" he had completed on March 11, 2008 as part of his medical screening.  *Id.* ¶¶ 39-40.  She did not ask Mr. Blanco about the substance of his request.  *Id.*

Instead, she told Mr. Blanco she believed he had misrepresented facts when he did not affirmatively disclose his ADHD on the questionnaire.  *Id.* ¶ 41.  Mr. Blanco explained to Dr. Mazorra that he did not understand the questions to ask about mental or emotional issues such as ADHD.  *Id.* ¶ 42.  Dr. Mazorra then told Mr. Blanco that the Defendants would not provide him with reasonable accommodations for his ADHD since he had not disclosed it when he was hired.  *Id.*

¶ 43. As Mr. Blanco left the meeting, Dr. Mazorra said to him, "next time don't lie in your medical questionnaire and you may get accommodations." *Id.* ¶ 44.

On or about October 1, 2008, Dr. Mazorra discussed Mr. Blanco's answers to the Medical Surveillance History Questionnaire with members of the Defendants' management in the Labor Relations Department. *Id.* ¶ 45. On October 20, 2008, the Defendants terminated Mr. Blanco from his employment. *Id.* ¶ 46. The Defendants claimed that Mr. Blanco was terminated because he did not disclose his ADHD on the Medical Surveillance History Questionnaire. *Id.* ¶ 47.

Mr. Blanco alleges that the Defendants had a duty under the ADA to keep the information obtained in the pre-employment medical screening process confidential and filed separately from other personnel information. *Id.* ¶¶ 48, 49. He alleges that Dr. Mazorra's disclosure of information from Mr. Blanco's questionnaire to members of the Defendants' management constituted a breach of this duty. *Id.* ¶¶ 50, 51. He further alleges that the breach proximately caused Mr. Blanco's termination, alleging that the Defendants terminated Mr. Blanco because of information in the questionnaire. *Id.* ¶¶ 52-55.

### C.    The Parties' Contentions

#### 1.    The Defendants' Motion

The Defendants assert that Count II[1] should be dismissed because Mr. Blanco has failed to plead a violation of the ADA. *Defs.' Mot.* They acknowledge

---

[1] Count II alleges:

> 63. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1-62 as if fully set forth herein.

that the ADA's confidentiality provision generally requires that employers keep information obtained from an applicant's pre-employment medical screening "on separate forms and in separate medical files" and treat the information as "a confidential medical record." *Id.* at 5 (quoting 42 U.S.C. § 12112(d)(3)(B)). However, they contend that Dr. Mazorra's disclosure to the Labor Relations Department merely informed appropriate decision-makers of an employee's "dishonesty and misconduct." *Id.* at 6. The Defendants maintain that no jurisdiction has found that such communication violates the ADA. *Id.* They argue that courts reviewing employers' disclosure of inconsistencies in employees' medical history have "considered whether the employer[s] used the medical information in a discriminatory manner and not whether the disclosure . . . was unlawful." *Id.* at 6-7 (citing *Lentos v. Hawkins Const. Co.*, No. 4:07CV3045, 2007 WL 3376760, at *11 (D. Neb. Nov. 7, 2007); *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 960-61 (10th Cir. 2002)). The Defendants characterize Mr. Blanco's complaint as alleging he was terminated because of the disclosure of his untruthfulness on the questionnaire, not because he has ADHD. *Id.* They assert this does not state a violation of the ADA's confidentiality provision. *Id.*

### 2. Mr. Blanco's Opposition

Mr. Blanco responds that Count II of his Amended Complaint states a claim under the ADA confidentiality provision. *Pl.'s Opp'n.* First, he argues that the

---

64. Defendants' conduct constitutes unlawful discrimination against Plaintiff in violation of the ADA and Defendants have violated Plaintiff's rights under the ADA.

*Compl.* ¶¶ 63, 64.

Defendants' motion fails to accept as true the factual allegations in the Amended Complaint. *Id.* at 4. He says the motion "is based on the assertion that Plaintiff 'was untruthful on his medical questionnaire.'" *Id.* To the contrary, he asserts that he answered the questions truthfully and that the Defendants' motion should be denied because it "violates the cardinal rule of motions to dismiss by ignoring and contradicting the factual allegations of Plaintiff's Amended Complaint." *Id.*

He further contends that "the plain language of the ADA supports" his claim. *Id.* at 5. He argues that the confidentiality provision plainly requires that "information obtained during a pre-employment medical examination regarding the 'medical condition or history' of the applicant" be kept confidential. *Id.* at 6 (quoting 42 U.S.C. § 12112(d)(3)(B)). He maintains that Dr. Mazorra violated this directive by disclosing "this information to multiple supervisors and managers at BIW." *Id.* Mr. Blanco acknowledges that there are three exceptions to the confidentiality provision but argues that none applies here. *Id.* at 6-7. He contends that the only exception that could arguably apply is the first, which says, "supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations." *Id.* at 7 (quoting § 12112(d)(3)(B)(i)). However, he argues that the exception does not apply because the Amended Complaint alleges Dr. Mazorra disclosed the answers to the medical questionnaire to "highlight[] that Plaintiff had not disclosed his ADHD," not to inform supervisors and managers regarding necessary restrictions and accommodations. *Id.*

Mr. Blanco further contends that the ADA generally and the confidentiality provision specifically should be interpreted broadly. *Id.* at 7-9. He asserts that "the purpose of the confidentiality provision is to 'protect disabled employees from job discrimination by ensuring the results of job-related medical examinations would not be kept in their personnel files.'" *Id.* at 8 (quoting *Yoder v. Ingersoll-Rand Co.*, 31 F. Supp. 2d 565, 569 (N.D. Ohio 1997)). He argues that the ADA "goes to great lengths" to limit supervisors' and managers' access to employee medical information because they "are the persons who are most likely to discriminate against an employee on the basis of information obtained regarding the employee's disabilities, medical information, and medical history." *Id.* Accordingly, he asserts the ADA should be read broadly to prohibit access to medical examination information when it is not "expressly permitted by the strict language of the ADA." *Id.* at 9.

Moreover, Mr. Blanco argues that the authority the Defendants cite does not support their motion. *Id.* First, he says *Yoder v. Ingersoll-Rand*, 31 F. Supp. 2d 565 (N.D. Ohio 1997) broadly construes the confidentiality provision to protect employees from any discrimination from the disclosure of medical information. *Id.* He asserts that Dr. Mazzora's disclosure falls into this broad scope. *Id.* Second, he notes that several of the cases Defendants cite recognize a cause of action for violations of the confidentiality provision. *Id.* at 9-10 (citing *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 969 (8th Cir. 1999); *Pouliot v. Town of Fairfield*, 184 F. Supp. 2d 38, 54 (D. Me. 2002) (*Pouliot I*); *Pollard v. City of Northwood*, 161 F. Supp. 2d 782, 793 (N.D. Ohio 2001)). Third, responding to the Defendants citation

of an Equal Employment Opportunity Commission (EEOC) publication to support their contention that Dr. Mazorra's disclosure fits an exception to the confidentiality provision, Mr. Blanco counters that the EEOC publication emphasizes the limited scope of those exceptions. *Id.* at 10 (citing EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, NO. 915.002, ADA ENFORCEMENT GUIDANCE: PREEMPLOYMENT DISABILITY-RELATED QUESTIONS AND MEDICAL EXAMINATIONS (1995)) (*Enforcement Guidance*). He says the EEOC guidance "confirms the plain language of the ADA in setting out that the information from the medical examination may be shared with persons involved in the hiring decision on a need to know basis for purposes of determining whether the employee is able to perform the job and whether the employee needs reasonable accommodations." *Id.* However, he contends that Dr. Mazorra's disclosure had "nothing to do with Mr. Blanco's ability to perform the job and the employee's need for accommodations." *Id.* Fourth, Mr. Blanco asserts that the two cases the Defendants cite involving employees' dishonest answers on medical examinations do not implicate the confidentiality provision. *Id.* at 10-11. He observes that both *Lentos v. Hawkins Const. Co.*, No. 4:07CV3045, 2007 WL 3376760, at *11 (D. Neb. Nov. 7, 2007), and *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 960-61 (10th Cir. 2002), considered whether employers used the results of medical examinations for discriminatory purposes in violation of section 12112(d)(3)(C), not whether they unlawfully disclosed the results in violation of section 12112(d)(3)(B). *Id.* at 11.

Finally, Mr. Blanco contends that "the only court that has ruled on the issue set out in this case found a violation of the ADA." *Id.* He asserts that in *Downs v. Massachusetts Bay Transp. Auth.* 13 F. Supp. 2d 130 (D. Mass. 1998), the District of Massachusetts found an employer violated the confidentiality provision when it terminated an employee after a representative notified a supervisor of inconsistencies between the employee's answers on a medical history form and his actual medical history. *Id.* at 11-12. Mr. Blanco says that the District of Massachusetts appropriately applied the confidentiality provision to facts parallel to the facts here. *Id.* at 12-13.

### 3.    The Defendants' Reply

The Defendants reply that Mr. Blanco "misunderstands the scope of the ADA and its Confidentiality provision." *Defs.' Reply* at 2. They assert that Mr. Blanco pleaded that Dr. Mazorra revealed to the Labor Relations Department omissions from, as opposed to answers to, the medical questionnaire. They observe that Mr. Blanco voluntarily divulged his ADHD to his supervisor and argue that "the nondisclosure provisions . . . of the ADA do not govern voluntary disclosure of medical information initiated by the employee." *Id.* (quoting *Sherrer v. Hamilton County Bd. of Health*, 747 F. Supp. 2d 924, 931 (S.D. Ohio 2010) (internal quotation marks omitted)).

The Defendants further counter Mr. Blanco's assertion that the motion to dismiss should be denied because they failed to accept the Amended Complaint's factual allegations as true. *Id.* They contend that it is irrelevant whether Mr.

Blanco's omission of his ADHD on the questionnaire was untruthful or done in good faith, because he admits that it was omitted and it is this omission that Dr. Mazorra communicated to the Labor Relations Department. *Id.* at 2-3.

Moreover, the Defendants argue that Mr. Blanco's reliance on *Downs* is misplaced because *Downs* "did not hold that a communication about the plaintiff's failure to disclose medical information constituted a violation of the Confidentiality provision." *Id.* (citing 13 F. Supp. 2d at 141-42). Instead, the Defendants say that, in *Downs*, it was the disclosure of the plaintiff's entire medical history, which went beyond the plaintiff's consent to limited disclosure, that violated the confidentiality provision. *Id.* (citing 13 F. Supp. at 141-42). The Defendants further argue that *Downs* is inapplicable because Mr. Blanco voluntarily divulged the ADA-relevant portion of his medical history—his ADHD—to management prior to disclosure of the questionnaire; whereas in *Downs*, management was not aware of the plaintiff's history of injuries until his medical file was disclosed. *Id.* at 3-4.

The Defendants contend case law establishes that an employer must disclose an employee's medical condition to violate the confidentiality provision. *Id.* at 4. They note that a supervisor disclosed an employee's back injury to a new employer in *Cossette*, an employer disclosed an employee's diabetes diagnosis to the media in *Pouliot*, and an employer disclosed an employee's psychological condition to the media in *Pollard*. *Id.* at 4-5 (citing *Cossette*, 188 F.3d at 969; *Pouliot*, 226 F. Supp. 2d 233, 246-47 (D. Me. 2002) (*Pouliot II*); *Pollard*, 161 F. Supp. 2d at 793). They

observe that Mr. Blanco did not allege Dr. Mazorra disclosed any medical condition and that Mr. Blanco voluntarily revealed his ADHD diagnosis. *Id.* at 5.

Moreover, the Defendants argue that even if Dr. Mazorra disclosed medical information to the Labor Relations Department, it was appropriately disclosed to decision-makers "on a 'need to know' basis." *Id.* (citing *Enforcement Guidance*). They say Mr. Blanco offers no support for his position that the Labor Relations Department does "not fall within the 'need to know' category." *Id.* The Defendants further cite authority in a variety of legal contexts for the proposition that "Courts have generally recognized an employer's need to communicate freely with key personnel about human resources matters without opening itself up to legal claims of loss of privilege or breach of confidentiality." *Id.* at 5-6. They contend that *Lentos* and *Garrison* are consistent with this authority in that they recognized "employers' right to know that their employees have failed to disclose pertinent medical information on pre-employment, post-offer medical questionnaires." *Id.* at 6 (citing 2007 WL 3376760 at *11 and 287 F.3d at 960-61).

## II.    DISCUSSION

### A.    Applicable Law

#### 1.    Motion to Dismiss

Rule 12(b)(6) provides that a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In ruling on a motion to dismiss under Rule 12(b)(6), a court "must assume the truth of all well-plead facts and give the plaintiffs the benefit of all reasonable inferences

therefrom." *Genzyme Corp. v. Fed. Ins. Co.*, 622 F.3d 62, 68 (1st Cir. 2010). To survive a motion to dismiss, "a complaint must establish a plausible entitlement to relief." *Id.* (internal quotations omitted).

In *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011), the First Circuit explained the Supreme Court's recent refinements to the 12(b)(6) analysis. It advised that "a court should employ a two-pronged approach" in resolving a motion to dismiss. *Ocasio-Hernandez*, 640 F.3d at 12. First, it should identify and disregard statements in the complaint that merely offer "legal conclusions couched as fact" or "threadbare recitals of the elements of a cause of action." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted)). Second, a court should treat non-conclusory allegations in the complaint as true, "even if seemingly incredible." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951)). "If the factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949)). Legal conclusions are not entitled to the presumption of truth granted to factual allegations. *Id.* at 10. In conducting this two-pronged approach, a court should keep in mind that "evaluating the plausibility of a legal claim is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 11 (quoting *Iqbal*, 129 S. Ct. at 1950)).

### 2.    The ADA Confidentiality Provision

The ADA prohibits "covered entities" from discriminating against "a qualified individual on the basis of a disability in regard to . . . discharge of employees."  42 U.S.C. § 12112(a).  The ADA authorizes employers to "require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition the offer of employment on the results of such examination."  42 U.S.C. § 12112(d)(3).  However, with limited exceptions, the ADA mandates that the employer keep strictly confidential the results of a post-job-offer examination; the examination is allowed only if:

> (B)  information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that—
>
>> (i)  supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;
>>
>> (ii)  first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and
>>
>> (iii)  government officials investigating compliance with this chapter shall be provided relevant information on request; and
>
> (C)  the results of such examination are used only in accordance with this title.

42 U.S.C. § 12112(d)(3).

## B.    Statutory Analysis

The Court resolves this motion as a matter of straightforward statutory interpretation. The Defendants are "covered entities" within the meaning of the ADA, and they made a job offer to Mr. Blanco and conditioned the offer on the results of an employment entrance examination. Mr. Blanco participated in the required examination and provided information about his medical conditions and medical history. Under the ADA, unless the disclosed information fell within certain narrow exceptions, the Defendants were required to maintain it "on separate forms and in separate medical files" and treat it "as a confidential medical record." 42 U.S.C. § 12112(d)(3)(B). The statute emphasizes the restricted disclosure of the information by requiring that "the results of such examination" be "used only in accordance with this subchapter." § 12112(d)(3)(C).

The second and third exceptions in § 12112(d)(3)(B)(ii), (iii)—regarding first aid and safety personnel and government officials—do not apply. This leaves one potential exception to allow disclosure of the information in the employment entrance examination medical file: "supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations." 42 U.S.C. § 12112(d)(3)(B)(i). There is nothing in the Amended Complaint that would allow the Court to conclude that Dr. Mazorra disclosed the contents of the medical questionnaire to the Defendants' management personnel in order to advise them of "necessary restrictions on the work or duties" for Mr. Blanco or for "necessary accommodations." To the contrary, she disclosed the information to management because in her view he had lied on the

questionnaire, not to advise them of necessary restrictions or accommodations. The Court cannot squeeze these facts into § 12112(d)(3)(B)(i).

As none of the exceptions applies and as a matter of direct statutory interpretation, the Court concludes that the Plaintiff has alleged sufficient facts to avoid dismissal as to whether Dr. Mazorra's disclosure violated the confidentiality provision of the ADA.

### C.    Truthfulness of the Patient History

In their initial memorandum, the Defendants pressed the point that Mr. Blanco lied on the Medical Surveillance History Questionnaire and that "the law does not seek to prevent employers from having knowledge of their employees' dishonesty and misconduct and communicating such information to appropriate decision-makers." *Defs.' Mot.* at 6. They emphasized that "when courts have reviewed an employer's actions based on its discovery that an employee has lied on a medical questionnaire, these courts have considered whether the employer used the medical information in a discriminatory manner and not whether the disclosure of the employee's dishonesty was unlawful." *Id.* at 7. They concluded that "[u]nder existing law, a disclosure by an employer's medical director to its labor relations managerial decision makers of an employee's untruthfulness on a medical questionnaire does not constitute a violation of the ADA's Confidentiality provision." *Id.*

In response, Mr. Blanco pointed out that he had alleged in the Amended Complaint that he truthfully answered the questions. *Pl.'s Resp.* at 4. In his Amended Complaint, Mr. Blanco alleged:

> Plaintiff answered the questions on the Medical Surveillance History Questionnaire" truthfully based on his understanding of the questions.

*Am. Compl.* ¶ 28. Mr. Blanco argued that the Defendants' motion violated the "cardinal rule of motions to dismiss by ignoring and contradicting the factual allegations of the Plaintiff's Amended Complaint." *Pl.'s Resp.* at 4.

In their Reply, the Defendants contend that it is irrelevant whether Mr. Blanco thought he was truthfully answering the questionnaire. *Defs.' Reply* at 2-7. They say that he has admitted that he did not disclose his ADHD and "it was his failure to disclose his ADHD that constitutes Dr. Mazorra's communication to BIW's labor department." *Id.* at 3.

The Defendants have shifted ground. The original premise of their motion was that Mr. Blanco lied and that the courts treat employer disclosures of employee misrepresentations differently than employer disclosures of medical information; in effect, they contended that they fired Mr. Blanco not for failing to reveal medical information but for lying. Mr. Blanco's response, however, doomed their motion because he pointed out that whether he truthfully answered the questionnaire is a factual question and for purposes of the motion to dismiss the Court must accept his allegations as true. Faced with this rudimentary and persuasive response, the Defendants stepped back in their reply and proposed that his truthfulness is irrelevant.

Either way, the Defendants' motion fails. To the extent the Defendants' motion rests on the assumption that Mr. Blanco lied about his medical condition, the motion to dismiss cannot succeed because the Court must assume the truth of the allegations in the Amended Complaint, including that he thought he was truthfully answering the questionnaire. The Defendants cannot succeed in a motion to dismiss premised on their version of a contested fact.

To the extent the Defendants rely on the contention that it does not matter whether Mr. Blanco lied, they still lose. The Court agrees that whether he lied is not dispositive since the confidentiality provision does not apply only to truthful information. But this does not assist the Defendants. The ADA clearly protects the confidentiality of Mr. Blanco's response if truthful and the ADA still protects its confidentiality if not. In other words, there is no prevarication exception to the ADA's confidentiality mandate for employment entrance examinations, much less for information the company doctor perceives is inaccurate. It is the information, accurate or not, that the statute protects.

## D. Medical Information

During oral argument, the Defendants maintained that the ADA protects neither the employer's disclosure of misleading medical information nor its disclosure of an applicant's failure to reveal a condition during an employment entrance examination. Again, the statute does not differentiate between accurate and inaccurate medical information. 42 U.S.C. § 12112(d)(3)(B) ("information obtained regarding the medical condition or history of an applicant"). So long as the

information relates to "the medical condition or history of the applicant," it is statutorily protected.  The Court also rejects the Defendants' earnestly pressed point that the confidentiality provision of the ADA does not apply to an applicant's negative as opposed to positive questionnaire responses.  Again, the statute makes no such distinction.[2]

The Court concludes that the statute does not support the Defendants' arguments.

### E.    Policy Considerations

The parties marshaled a number of policy arguments in support of their respective positions.  The most telling from the Defendants' viewpoint is that the ADA does not and should not allow a potential employee to lie about his medical history in order to obtain employment and if the employer later discovers the lie, the employer should have the right to discipline the employee, including termination.  The persuasiveness of this argument is heightened in a large shipyard like the Defendants' operation, where there are dangers inherent in operating large pieces of equipment, and a non-disclosed medical or mental condition could have dire consequences for the employee and for those around him.  The Court does not diminish the potential seriousness of non-disclosure or the manifest need for potential employees to tell the truth.

---

[2] It would be exceedingly odd for the law to distinguish between affirmative and negative responses in a medical questionnaire.  It is typical for physicians to take a complete medical history, confirming what medical conditions the patient has and has not had, and the cumulative information—both affirmative and negative—is essential for the differential diagnosis approach to medicine.

Mr. Blanco responds that there is a paramount imperative to maintain as strictly confidential any highly sensitive medical information. He notes that the pre-employment questionnaire he completed included a warning that untruthfulness could be grounds for termination, and he said that most applicants will tell the truth, especially when faced with a form prominently warning of draconian consequences for lying. For the subset of employees who are willing to dissemble to get a job, the Court accepts the Defendants' point that there is an irreducible risk that an employee could hide a serious condition that could pose a risk to himself and others and that the confidentiality provision has the obverse effect of encouraging potential employees to be less than forthcoming.

During oral argument, the Defendants also contended that Mr. Blanco's interpretation of the ADA confidentiality provision would place company doctors in an untenable position. The Defendants maintained that upon learning either from the hired employee or from outside medical sources that the employee lied on an employment entrance examination questionnaire, the doctor would be forced to remain silent, effectively joining the mendacious employee in a conspiracy against their mutual employer. The Defendants stress that if the revealed condition places the employee and his co-workers at risk, the doctor's conflicting loyalty would become a safety issue.

Although the extent of a company physician's conflict may be exaggerated in the context of an employment entrance examination, it is true that a company physician must constantly balance the rightful demands of her employer against

her professional obligations to her patient.  *See* Edward A. Emmett, Book Review, 26 J. LEGAL MED. 141, 149-50 (2005) (reviewing ELAINE DRAPER, THE COMPANY DOCTOR: RISK, RESPONSIBILITY, AND CORPORATE PROFESSIONALISM (2003)) (discussing the conflicting responsibilities of in-house physicians with regard to medical information privacy); Elaine Alma Draper, *Social Issues of Genome Innovation and Intellectual Property*, 7 RISK 201, 202 (1996) (explaining that "[m]anagers and safety officers pressure in-house physicians and nurses for information on individual workers. . . . Some doctors complain that at times they are inundated with requests for medical information from managers who want to know detailed medical information and test results, not only the fitness of the person to do the work"); Neil J. Squillante, *Expanding the Potential Tort Liability of Physicians: A Legal Portrait of "Nontraditional Patients" and Proposals for Change*, 40 UCLA L. REV. 1617, 1631 (1993) (explaining the conflicting loyalties in occupational medicine "among the requirements of professional ethics; the obligations to the patient, the demands of the employer; and their responsibilities to public health" (internal punctuation omitted)).

The brief answer, however, is that these policy arguments do not trump the statutory language.  Congress, not this Court, is a policy-making body, and the Court is duty-bound to follow the law as enacted by Congress.  Congress may or may not have considered whether to carve out a disclosure exception for instances where the employer concludes that the employee lied or misrepresented his pre-

employment medical or mental condition.  In any event, there is no such exception in the statute.

### F.     Case Law

The confidentiality provision of the ADA has generated some judicial discussion but none, in the Court's view, directly on point.  In *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, the Ninth Circuit observed that for employment entrance examinations, such as Mr. Blanco's, "the ADA imposes no restriction on the *scope* of entrance examinations; it only guarantees the *confidentiality* of the information gathered."   135 F.3d 1260, 1273 (9th Cir. 1998).   This general comment re-emphasizes the confidential nature of the information obtained in an employment entrance examination.  *Accord Cossette*, 188 F.3d at 969; *Pouliot I*, 184 F. Supp. 2d at 54; *Pollard*, 161 F. Supp. 2d at 793.

The parties cite *Yoder v. Ingersoll-Rand Company*, 31 F. Supp. 2d 565 (N.D. Oh. 1997).  But in *Yoder* the Court addressed medical information not generated by an employment entrance examination and the *Yoder* Court concluded that the confidentiality provision of the ADA did not apply.  *Id.* at 569 ("The statute goes no further than requiring employers to keep [a] limited class of medical records confidential").

At oral argument, the Defendants directed the Court to *EEOC v. C.R. England, Inc.*, Nos. 09-4207, 09-4217, 2011 WL 1651372 (10th Cir. May 3, 2011). The disclosure at issue in that case was voluntary "and not gleaned from a medical examination or inquiry."   *C.R. England*, 2011 WL 1651372, at *13.  The Tenth

Circuit held that "if an employer discloses medical information that was voluntarily offered by an employee—outside of the context of an authorized employment-related medical examination or inquiry—then the employer is not subject to liability under § 102(d)." *Id.* at *14. That is not the case here. Mr. Blanco's allegation relates to Dr. Mazorra's disclosure of information obtained through the pre-employment medical questionnaire. Mr. Blanco's voluntary communication of his ADHD diagnosis, which took place months after he completed the questionnaire, is not at issue.

In 1998, a United States District Court in Massachusetts concluded that an employer's unauthorized disclosure of medical information made confidential under § 12112(d)(3)(B) was actionable under the ADA. *Downs v. Mass. Bay Trans. Auth.*, 13 F. Supp. 2d 130, 141-42 (D. Mass. 1998). In *Downs*, the plaintiff applied for a position with the Massachusetts Bay Transportation Authority (MBTA). *Id.* at 132. Before he was hired, he filled out a medical history form that asked whether he had "ever received workers' compensation" or "ever had joint pains." *Id.* The plaintiff "answered both questions in the negative despite the fact that he had received workers' compensation on several prior occasions, twice for injuries to his elbow." *Id.* He passed the initial physical examination but had to provide additional information and pass another examination before he was finally hired. *Id.* at 132-33. Roughly a year and a half after he was hired, the plaintiff filed a claim for workers' compensation benefits due to a tendon problem in his right elbow. *Id.* at 133. "In the course of evaluating this claim, an MBTA representative learned of

[the plaintiff]'s prior elbow injury and his workers' compensation claims, and discovered that [the plaintiff] had responded falsely to several questions on the medical history form he filled out during his pre-employment physical examination." *Id.* The claims representative reported this discovery to her supervisor, and the MBTA ultimately discharged the plaintiff "for falsifying information on his employment application." *Id.*

The *Downs* Court concluded that the MBTA violated the confidentiality provision "by allowing its workers' compensation claims representative unlimited access to his medical file." *Id.* at 141. It did not identify the disclosure of any specific condition, diagnosis, or symptom listed in the file in coming to its conclusion. Instead, the access alone was enough to constitute a violation.

*Downs* is generally consistent with this Court's conclusion on the pending motion to dismiss. The Defendants seek to distinguish *Downs* on the ground that Mr. Blanco voluntarily revealed his ADHD diagnosis to his employer. *Def.'s Reply* at 3-4. But this argument misses the point. The ADA does not bar employers from making employee-authorized disclosures of medical information; the ADA bars employers from unauthorized disclosures of information obtained from employment entrance examinations.

The remaining cases do not illuminate the proper interpretation of the ADA's confidentiality statute for employment entrance examinations.

### III. CONCLUSION

The Court DENIES Bath Iron Works Corporation and General Dynamics Corporation's Motion to Dismiss Count II of the Amended Complaint (Docket # 10).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 6th day of July, 2011